**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Therese Hood, Appellant,

v.

United Services Automobile Association, Respondent.

Appellate Case No. 2019-001943

———————

Appeal From Charleston, Jasper County
Kristi F. Curtis, Circuit Court Judge

———————

Unpublished Opinion No. 2023-UP-011
Heard November 17, 2022 – Filed January 11, 2023

———————

**AFFIRMED**

———————

Eric Marc Poulin, Angeline M. Larrivee, and Roy T. Willey, IV, of Anastopoulo Law Firm, LLC, of Charleston; and Alexis Wimberly McCumber, of Athens, Georgia, all for Appellant.

Robert William Whelan, of Whelan Mellen & Norris, LLC, of Charleston, for Respondent.

———————

**PER CURIAM:** Therese Hood appeals a circuit court order granting a judgment notwithstanding the verdict (JNOV) to her automobile insurer, United Services

Automobile Association (USAA).  This bad faith case against USAA arises out of Hood's claim for underinsured motorist (UIM) benefits.

Hood was in a three-car wreck.  Antoine Johnson t-boned Hood's car and caused her to cross a median and collide head-on with William and Mary Kuck's car.  Several lawsuits followed.  Hood sued Johnson.  The Kucks filed suits against Hood and Johnson.

A key factual dispute—if not the key factual dispute—in these cases was visibility at the time of the wreck and whether Hood's headlights had been on.  Hood maintained she used her car's automatic light setting and that this would have ensured her lights were on at the time of the wreck.

USAA provided Hood with counsel to defend the claims the Kucks brought against her.  Hood's lawyer defended her position that her car's headlights had been on.  At some point, he had an expert conduct a lamp filament analysis on Hood's car.  This analysis suggested Hood's high beams had been on.

Hood's suit against Johnson (from here on, the UIM suit) went to trial, but that was after Johnson's insurance carrier tendered its $25,000 liability limits.  USAA stepped into Johnson's shoes and defended the suit per the UIM statute.  *See* S.C. Code Ann. § 38-77-160 (2015).  There, USAA—defending in Johnson's name—took the position Hood's headlights had been off.  Even though there was an expert report (mentioned above) suggesting Hood's high beams had been illuminated at the time of the wreck, four eyewitnesses had given statements that Hood's lights were off, and the responding officer's incident report stated Hood's car was still running and her lights were off when he arrived at the scene.  The expert's report was also hard to reconcile with Hood's explanation about using her vehicle's automatic light setting, which would not have illuminated her high beams.

Hood prevailed in the UIM case.  It was nearly a defense verdict rather than a verdict in Hood's favor: the jury attributed 49% of the fault to Hood and found $2.5 million in damages.  Still, even after the verdict was adjusted for Hood's share of the comparative fault, the verdict exceeded Hood's $1 million UIM policy limits.

All of that background brings us to this bad faith case.  Hood's main theory of bad faith is tied to the dispute about her headlights.  She argues USAA committed bad faith when it argued in the UIM case that her lights were off at the same time the lawyer USAA hired to defend her from the Kucks was arguing her headlights had been on.  A lot of the argument in the bad faith trial was that USAA supposedly took

inconsistent positions and "lied." Yet, there is no denying the existence of a genuine factual dispute about whether Hood's lights had been on or off.

Hood's other bad faith allegation came out of mediation in the UIM claim. USAA authorized the lawyer defending the claim to offer up to $250,000 to settle the case. That was also the amount USAA set aside as its reserve for the claim. USAA's highest offer during the mediation was $200,000. Hood's lowest offer was $650,000 (though her lawyer informally floated that the case could settle between $300,000 and $400,000). Hood claims it was bad faith for USAA to not offer the full amount of its authority and reserve.

The case was tried to a jury. The verdict form asked the jury two questions. The first was whether USAA breached the duty of good faith and fair dealing. The second was whether USAA had been negligent. The jury found USAA did not breach the covenant good faith and fair dealing but that USAA had been negligent.

USAA subsequently moved for JNOV, arguing (as it had throughout the case) that there was no tort of negligence separate from bad faith. After conducting a hearing, the circuit court agreed and granted JNOV.

**JNOV**

Hood argues JNOV was improper because South Carolina recognizes a cause of action for negligence that is separate from a cause of action for bad faith against an insurer. We respectfully disagree.

Hood directs us to precedent discussing bad faith or unreasonable action by the insurer. *See Nichols v. State Farm Mut. Auto. Ins. Co.*, 279 S.C. 336, 340, 306 S.E.2d 616, 619 (1983) ("[I]f an insured can demonstrate bad faith or unreasonable action by the insurer in processing a claim under their mutually binding insurance contract, he can recover consequential damages in a tort action."), *superseded on other grounds by statute*, Employee Retirement Income Security Act of 1974, § 514(a), 29 U.S.C. § 1144(a), (b)(2)(A), *as recognized in Duncan v. Provident Mut. Life Ins. Co. of Phila.*, 310 S.C. 465, 427 S.E.2d 657 (1993). As we read *Nichols*, it recognizes a single tort encompassing bad faith and negligence, not separately viable claims for bad faith and negligence. The claim in these cases is that the insurance company has breached the covenant of good faith and fair dealing that is implied in every insurance contract. *See Tadlock Painting Co. v. Md. Cas. Co.*, 322 S.C. 498, 504, 473 S.E.2d 52, 55 (1996) (stating that proposition). Indeed, precedent explains an insurance company commits "bad faith" when (among other elements) there is

"bad faith or unreasonable action *in breach of* an implied covenant of good faith and fair dealing arising on the contract." *Crossley v. State Farm Mut. Auto. Ins. Co.*, 307 S.C. 354, 359, 415 S.E.2d 393, 396-97 (1992) (emphasis added).

Federal cases support this position. *See Skinner v. Horace Mann Ins. Co.*, 369 F. Supp. 3d 649, 654 (D.S.C. 2019) (finding an insured's negligence claim was duplicative of her bad faith claim, and explaining that freestanding negligence claims against insurers are generally improper in the District of South Carolina); *Kraemer v. Mass. Mut. Life Ins. Co.*, No. 2:15-04571-CWH, 2017 WL 5635469, at *6 (D.S.C. Apr. 28, 2017) (relying on the South Carolina elements of bad faith and an unpublished federal case stating no authority supports a freestanding negligence claim separate from a bad faith claim). Though these federal cases are not dispositive, we believe their general reasoning on this point is correct.

To be sure, it is appropriate for a jury to consider an insurance company's negligence when deciding whether the insurer breached its duty of good faith and fair dealing and thereby acted in bad faith. *See BMW of N. Am., LLC v. Complete Auto Recon Servs., Inc.*, 399 S.C. 444, 453-54, 731 S.E.2d 902, 907-08 (Ct. App. 2012) (stating an insured can demonstrate bad faith by showing her insurer acted unreasonably because no reasonable basis supported withholding payment and finding the circuit court did not err in granting the insurer's motion for summary judgment because it had reasonable grounds upon which to contest the insured's claim); *Cock-N-Bull Steak House, Inc. v. Generali Ins. Co.*, 321 S.C. 1, 7, 466 S.E.2d 727, 730 (1996) (finding the circuit court did not err in granting an insured's directed verdict motion on its bad faith claim because no reasonable basis supported the insurer's denial of benefits). Indeed, *Nichols* held the jury was entitled to consider negligence by the insurance company in deciding whether the insurance company breached the covenant of good faith and fair dealing. 279 S.C. at 342, 306 S.E.2d at 620. The circuit court's bad faith charge correctly presented these principles to the jury. The decision to grant JNOV was also correct. In this context, there is no tort against an insurance company for negligence that does not also cross the threshold of breaching the duty of good faith and fair dealing arising out of the insurance contract.

**DIRECTED VERDICTS AND SUMMARY JUDGMENTS**

Hood also appeals various rulings the circuit court made at the summary judgment and directed verdict stages. These arguments are not properly before us. Hood did not present any of these arguments to the circuit court in her posttrial motions or in her motion for the court to reconsider its JNOV ruling. That omission waives her right to argue them on appeal. *See Gordon v. Rothberg*, 213 S.C. 492, 505, 50 S.E.2d

202, 208 (1948) (refusing to consider "matters complained of [that] were not included in the appellants' ground on motion for new trial" because the circuit court "ha[d] not been given an opportunity of passing on same").

Even if we looked past waiver, our decision to affirm would be the same. We see no way a reasonable jury could find USAA acted in bad faith. "If there is a reasonable ground for contesting a claim, there is no bad faith." *Snyder v. State Farm Mut. Auto. Ins. Co.*, 586 F. Supp. 2d 453, 458 (D.S.C. 2008) (quoting *Crossley*, 307 S.C. at 360, 415 S.E.2d at 397); *see also Collins v. Auto-Owners Ins. Co.*, 759 F. Supp. 2d 728, 740 (D.S.C. 2010) ("[I]f there is a reasonable ground for offering less than the full amount demanded on a claim, then there is no bad faith in negotiations."). There is no reasonable doubt that USAA had a defense to the UIM claim. The record contained ample evidence of Hood's comparative negligence. This was not a situation in which there was no colorable defense to liability or damages. *See Orangeburg Sausage Co. v. Cincinnati Ins. Co.*, 316 S.C. 331, 342-43, 450 S.E.2d 66, 72-73 (Ct. App. 1994) (finding an insurer acts unreasonably by failing to offer damages when the damages are not disputed); *Cock-N-Bull*, 321 S.C. at 7, 466 S.E.2d at 730 (directing a verdict against an insurer that had no reasonable basis for denying benefits).

We are not aware of any authority supporting the proposition that an insurance company acts in bad faith by not offering to settle the case for the full amount of its authority or reserve. *See Snyder*, 586 F. Supp. 2d at 460 (holding the insurer did not act in bad faith in making a settlement offer based on its estimate of the value of the insured's claim because no evidence indicated the estimate was unreasonable); *Collins*, 759 F. Supp. 2d at 741-42 (holding the insurer acted reasonably, and therefore not in bad faith, in offering less than the insured's demand because the value of the insured's claim could reasonably be debated considering there were issues of liability and whether damages were attributable to preexisting conditions instead of the accident). We reject the suggestion that USAA's internal valuation of the case constitutes an "undisputed" sum owed to Hood. It may be that USAA had a duty to answer truthfully if asked whether it was offering the maximum amount of its authority, but that question was not asked here and is not before us.

Hood argues USAA acted in bad faith or unreasonably by taking disparate positions about her headlights in different cases. Again, we respectfully disagree. The UIM statute entitled USAA to defend the UIM case "for its own benefit." S.C. Code Ann. § 38-77-160. USAA did precisely that. It bears mentioning that "USAA" did not take disparate positions. USAA was not a party to the cases the Kucks brought against Hood. USAA obtained counsel to represent Hood. In the UIM case, USAA

stepped into Johnson's shoes, defended its own interest as allowed by statute, and justifiably relied on several pieces of evidence suggesting Hood's lights had not been on. It is true that Hood had the support of an expert, but there were problems with that evidence too. As we already mentioned, the report suggested Hood's high beams had been on, but none of the witnesses—not even Hood—said that had been the case. There was a reasonable ground for USAA to assert in the UIM suit that Hood's headlights were off. Thus, USAA did not act in bad faith in taking that position. *See Snyder*, 586 F. Supp. 2d at 458 ("If there is a reasonable ground for contesting a claim, there is no bad faith." (quoting *Crossley*, 307 S.C. at 360, 415 S.E.2d at 397)).

**CONCLUSION**

For these reasons, the circuit court's order is

**AFFIRMED.**

**KONDUROS, HEWITT, and VINSON, JJ., concur.**